USDC SCAN INDEX SHEET

















MEG   7/15/99   15:25

3:99-CV-01432   COVERALL NORTH V.

*1*

*CMP.*

John B. Little
CALLAHAN, LITTLE & SULLIVAN
12707 High Bluff Drive, Suite 100
San Diego, CA 92130
858-481-6111
858-481-9414 (fax)

Attorney for Plaintiff
Coverall North America, Inc.



99 JUL 14 PM 4:18

mooney

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

'99cv 1432 J   RBB

| | | |
|---|---|---|
| COVERALL NORTH AMERICA, INC. | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | COMPLAINT FOR DAMAGES |
| GERRY BARLOW, JOSEPH FAIRLEY, | ) | AND INJUNCTIVE |
| LEO DEAN HATCH and SUNSET | ) | RELIEF |
| BUILDING SERVICES, INC. | ) | [Jury Trial Demanded] |
| | ) | |
| | ) | Judge: |
| Defendants. | ) | |

For its Complaint against defendants Gerry Barlow ("Barlow"), Joseph
Fairley ("Farley"), Leo Dean Hatch ("Hatch") and Sunset Building Services, Inc. ("Sunset"),
plaintiff Coverall North America, Inc. ("Coverall") alleges as follows:

### THE PARTIES, JURISDICTION AND VENUE

1. Coverall is a Delaware corporation with its principal place of business at 500
W. Cypress Creek Road, Suite 580, Fort Lauderdale, Florida 33309. Coverall is in the
business of providing maintenance and janitorial services to businesses and companies
throughout the United States through local franchises and independent contractors.

2. Sunset is a California corporation with its principal place of business at 197 Woodland Parkway, Suite 104-154, San Marcos, California 92069. Sunset is in the business of providing maintenance or janitorial services to businesses and contracting with others to procure maintenance or janitorial services for businesses. Sunset competes with Coverall.

3. Barlow is an individual residing at 4986 Mount Gaywas, San Diego, California 92117 and is the former Vice President of Sales and Marketing for Coverall. Barlow is currently employed by Sunset and, upon information and belief, is one of the owners of Sunset.

4. Farley is an individual residing at 2426 Starlight Glen, Escondido, California 92026 and is the former Vice President of Operations for Coverall. Fairley is currently employed by Sunset and is one of the owners of Sunset.

5. Hatch is an individual residing at 12870 Sundance Avenue, San Diego, California 92129 and is the former Corporate Director of Operations for Coverall. Hatch is currently employed by Sunset and, upon information and belief, is one of the owners of Sunset.

6. This Court has subject matter jurisdiction pursuant to 28 USC §1331(a) because this is an action between citizens of separate states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has personal jurisdiction over the defendants because the defendants reside in California and some of the conduct giving rise to the claims for relief occurred in California.

7. Venue is proper in this Court pursuant to 28 USC §1391(a) because all defendants reside in San Diego County, California.

**FACTUAL ALLEGATIONS**

8. The market for providing maintenance and janitorial services is highly competitive. To succeed in this market, Coverall relies on the use of confidential and trade

-2-

secret information that it has developed and collected over the years. That confidential and trade secret information, includes, for example, the identity of Coverall's customers, Coverall's pricing information, the nature and scope of Coverall's contractual relationships with its customers and Coverall's business strategies relating to its customers and Coverall's competitors.

9. Coverall's confidential and trade secret information derives economic value from not being generally known to, and not being readily ascertainable by, Coverall's competitors. Coverall has taken reasonable steps under the circumstances to protect the secrecy of its confidential and trade secret information.

10. In their positions with Coverall, Barlow, Fairley and Hatch had responsibilities for managing or working with Coverall's major national and regional customers whose accounts represent a significant amount of Coverall's annual revenues. Coverall placed a high degree of trust and confidence in Barlow, Fairley and Hatch. As a result of their positions with Coverall, they had access to Coverall's confidential and trade secret information.

11. In September 1991, Fairley executed a Confidentiality Agreement with Coverall pursuant to which he acknowledged and agreed that Coverall's confidential and trade secret information was valuable and should not be disclosed to third parties. In addition, Fairley agreed not to compete with Coverall for a two year period following the termination of his employment with Coverall. A copy of Fairley's Confidentiality Agreement, which states that it is to be governed by Illinois law, is attached as Exhibit A.

12. On October 11, 1995, Hatch signed a Confidentiality Agreement with Coverall pursuant to which he acknowledged and agreed that Coverall's confidential and trade secret information was valuable and should not be disclosed to third parties. In addition, and in a further effort to protect Coverall's trade secrets, Hatch agreed not to compete with

Coverall for a two year period following the termination of his employment with Coverall. A copy of Hatch's Confidentiality Agreement is attached as Exhibit B.

13. While employed at Coverall, Barlow did not sign a non-competition agreement. Nevertheless, she understood that Coverall's confidential and trade secret information should not be disclosed to third parties.

14. In 1998, Coverall announced that it would be relocating its corporate headquarters from San Diego, California to Ft. Lauderdale, Florida. Sometime after that announcement, and unbeknownst to Coverall, Building One Services, Inc. ("Building One"), a Coverall competitor, was in contact with several Coverall executives, including Barlow and Fairley, to inquire as to whether they would be interested in leaving Coverall to work for Building One.

15. Although Building One had secretly discussed with Fairley and Barlow the opportunity to work for Building One, Fairley continued discussions with Coverall regarding the possibility of relocating to Florida. Ultimately, however, Fairley notified Coverall that he would not relocate and tendered his resignation from Coverall.

16. In January 1999, Coverall and Fairley entered into a severance agreement pursuant to which Coverall paid Fairley a substantial severance amount (the "Severance Agreement"). In return, Fairley again agreed to post employment restrictions on the use of Coverall confidential and trade secret information. In furtherance of its efforts to protect its confidential and trade secret information, Coverall included a post employment non-competition obligation in Fairley's Severance Agreement. A copy of the Severance Agreement is attached as Exhibit C.

17. Barlow resigned from Coverall in approximately February 1999.

18. Hatch also resigned from Coverall in February 1999.

19. Shortly after their resignations from Coverall, Barlow, Fairley and Hatch,

began business as Sunset Building Services, Inc., ostensibly to provide maintenance and janitorial services in the San Diego, California area.

20.  By working for Sunset in direct competition with Coverall, Barlow, Fairley and Hatch will inevitably disclose to Sunset and use Coverall's confidential and trade secret information to Coverall's detriment.

21.  By working for Sunset in direct competition with Coverall, and in a capacity that will inevitably lead to the disclosure of Coverall's confidential and trade secret information, Fairley and Hatch have breached their non-competition obligations to Coverall.

22.  While still employed by Coverall, Barlow had been responsible for Coverall's National Account Program.  Pursuant to this program, Coverall would negotiate with customers who would need maintenance and janitorial services on a nationwide or regional basis.  For example, Barlow was responsible for negotiating the Coverall National Accounts Agreements with the Sports Authority.

23.  The Sports Authority is a Florida based retailer of sporting goods.  The Sports Authority has over 100 retail locations throughout the United States.  While employed at Coverall, Barlow had been responsible for negotiating the agreements pursuant to which Coverall provided janitorial services at a large number of Sports Authority stores around the country.  Consequently, she knew the pricing methodology Coverall used to set its prices for those stores, as well as the actual prices in the agreements.  Barlow was also intimately familiar with the terms of the contracts between Coverall and the Sports Authority.

24.  In approximately June 1999, Barlow contacted individuals she knew at the Sports Authority in Florida.  She had originally been introduced to these individuals during her employment at Coverall.

25.  Within a week or two after Barlow's contact with the Sports Authority, Building One met with the Sports Authority to submit a bid to provide janitorial services to a

large number of Sports Authority locations. Subsequently, Building One submitted a bid for almost all, if not all, National Account locations covered by Coverall National Account agreements. (Coverall provides janitorial services at some Sports Authority locations through agreements reached with a Coverall regional office; Barlow would not necessarily have had access to the pricing for the locations covered by a Regional Office contract). In each case, Building One's bid was priced sufficiently below the existing Coverall price to be attractive to the Sports Authority.

26. In June 1999, the Sports Authority notified Coverall that it was terminating its cleaning services contracts with Coverall for 76 National Account locations. The Sports Authority advised Coverall that the basis for the decision to terminate the contracts was not due to any dissatisfaction with Coverall, but solely because of the lower price offered by Building One. In fact, the Sports Authority continued to use Coverall to provide service to those locations covered by Regional Office contracts, because, upon information and belief, Building One had not submitted a lower priced bid for those locations.

27. Within days after the Sports Authority had accepted Building One's bids, Barlow telephoned her contacts at the Sports Authority to report that she was looking forward to working with them again. This statement indicates an affiliation between Building One and Sunset and Barlow.

28. Building One would not have been able to underbid Coverall at 76 National Account locations without the assistance from Barlow and the use of her knowledge of Coverall's confidential and trade secret pricing methodology and actual prices.

29. The loss of the cleaning contracts at the 76 Sports Authority locations has resulted in significant damages to Coverall. Coverall estimates that the lost revenues from those locations will exceed $2,000,000 per year. Coverall would not have lost those contracts if not for the unfair competition by Building One using information apparently supplied by

Barlow.

## CLAIMS FOR RELIEF

### COUNT I

30. Coverall incorporates paragraphs 1 through 29 of this Complaint.

31. By operating a business in competition with Coverall and by Sunset hiring Hatch, Fairley has breached the January 15, 1999 Severance Agreement between Fairly and Coverall.

32. Coverall has satisfied and substantially performed all of its obligations under the Severance Agreement and any conditions precedent to recovery by Coverall under any of those agreements have been satisfied or waived.

33. Coverall has been damaged as a result of Fairley's breach of contract in an amount not presently known, but believed to exceed $500,000.

### COUNT II

34. Coverall incorporates paragraphs 1 through 33 of this Complaint.

35. By affiliating with a business in competition with Coverall, Hatch has breached the October 11, 1995 Confidentiality Agreement between Hatch and Coverall.

36. Coverall has satisfied and substantially performed all of its obligations under the Confidentiality Agreement and any conditions precedent to recovery by Coverall under any of those agreements have been satisfied or waived.

37. Coverall has been damaged as a result of Hatch's breach of contract in an amount not presently known, but believed to exceed $500,000.

**COUNT III**

38.  Coverall incorporates paragraphs 1 through 37 of this Complaint.

39. Coverall's confidential information and trade secrets referenced herein constitute trade secrets protected by Cal. Civ. Code §3426, *et seq.* in that the information (a) derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts by Coverall that are reasonable under the circumstances to maintain its secrecy.

47.  The defendants, individually and collectively, knowingly, willfully and maliciously misappropriated Coverall's trade secrets through improper means as contemplated by, and in violation of, Cal. Civ. Code §3426, *et seq.*

48.  Defendants' unlawful misappropriation of Coverall's trade secrets has caused Coverall to suffer damages in an amount to be determined at trial and threatens Coverall with imminent, irreparable harm for which Coverall has no adequate remedy at law. As such, Coverall is entitled to all appropriate injunctive relief and damages afforded by Cal. Civ. Code §3426, *et seq.*

49.  Defendants' unlawful misappropriation of Coverall's trade secrets was and is willful and malicious such that an award of punitive damages and Coverall's recovery of attorneys' fees is warranted pursuant to Cal. Civ. Code §3426, *et seq.*

**COUNT IV**

50.  Coverall incorporates paragraphs 1 through 49 of this Complaint.

51.  The defendants, collectively and individually, were aware of the contractual

-8-

duties owed by Fairley and Hatch, as set forth above, and the duty owed by the individual defendants, to preserve Coverall's confidential information and trade secrets and not utilize that information outside the scope of their employment with Coverall to the detriment of Coverall.

52. By soliciting, enticing, inducing or persuading one another to work together as part of Sunset or in affiliation with Building One, and by soliciting, enticing, inducing and persuading Sports Authority to cancel its existing contracts with Coverall, the defendants have intentionally and without privilege induced Fairley and Hatch to breach their contractual duties owed to Coverall, have interfered with Coverall's existing contractual relationship with Sports Authority, and have and continue to intentionally interfere with Coverall's prospective business relations with potential and existing Coverall customers.

53. Such intentional acts of the defendants have caused and continue to cause an actual breach and disruption of Coverall's contractual relationships, causing Coverall to suffer damages in an amount to be determined at trial and threatening Coverall with imminent, irreparable harm for which Coverall has no adequate remedy at law.

54. The defendants have acted knowingly, willfully, wantonly, maliciously and with a conscious disregard for the rights of Coverall such that an award of exemplary damages is warranted.

**COUNT V**

55. Coverall incorporates paragraphs 1 through 54 of this Complaint.

56. Coverall placed special confidence in trust in Fairley and Barlow as corporate vice presidents, giving them authority, discretion and control over much of

Coverall's business operations and Coverall's customer relationships.

57. Accordingly, Fairley and Barlow each owed Coverall a high degree of loyalty and stood in the relation of a fiduciary to Coverall. Their fiduciary obligations continued even after they ceased to be officers of Coverall.

58. Fairley and Barlow, both during and after their employment with Coverall, willfully and maliciously committed numerous breaches of their respective fiduciary duties of good faith, loyalty and honesty to Coverall by, among other things, systematically and methodically planning to leave Coverall and to set up a business to compete with, or assist Coverall's competitors in competing with, Coverall, misappropriating Coverall's confidential business information and trade secrets for use in their newly formed enterprise, and soliciting business from Coverall's customers.

59. As a direct and proximate cause of Fairley's and Barlow's breaches of duties, Coverall has sustained damages in an amount to be determined at trial. In addition, Fairley's and Barlow's conduct threatens Coverall with imminent, irreparable harm for which Coverall has no adequate remedy at law.

60. Fairley's and Barlow's breaches of their fiduciary duties owed to Coverall were committed knowingly, maliciously, wantonly, willfully and in conscious disregard for the rights of Coverall, such that an award of exemplary damages is warranted.

WHEREFORE, Coverall prays that the Court grant judgment in its favor and that it be awarded the following relief:

A. Preliminary and permanent injunctions enjoining Fairley, Barlow, Hatch and Sunset from using, benefitting from, or further disclosing Coverall's confidential business

information and trade secrets;

B. Preliminary and permanent injunctions enjoining Fairley, Barlow, Hatch and Sunset from benefitting from their knowledge of Coverall's confidential business information and trade secrets by requiring that they, collectively and individually, have no contact with any of Coverall's customers for a period of two years;

C. Preliminary and Permanent injunctions enjoining Fairley and Hatch from violating their contractual commitments set forth in the Confidentiality Agreement and in the January 15 Severance Agreement;

D. An order that Fairley, Barlow, Hatch and Sunset return immediately to Coverall all documents, computer-stored information and other records, and all copies thereof, containing Coverall's confidential business information and trade secrets and all such records and data stored in machine-readable form;

E. An Order that Fairley, Barlow, Hatch and Sunset immediately disgorge themselves, individually and collectively, of any and all profits recognized by any one or all of them from Building One's contractual relationships with Sports Authority and any other Coverall customer defendants have been able to procure through the improper use of Coverall's confidential business information and trade secrets;

F. An award of actual damages in the amount shown at trial, but believed to exceed $500,000;

G. An award of punitive damages in the amount of $5,000,000;

H. An award of Coverall's attorneys' fees and other costs of this litigation;

I. An award of prejudgment interest; and

J.  Such other relief, at law or equity, as this Court may deem just.

Respectfully submitted,

John Little
CALLAHAN, LITTLE & SULLIVAN,
Attorney for Plaintiff,
COVERALL NORTH AMERICA, INC.

**OF COUNSEL:**
James B. Niehaus
Michael E. Smith

**Thompson, Hine & Flory LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
(216) 566-5500

## <u>JURY DEMAND</u>

Pursuant to Rule 38, Fed. R. Civ. P., Plaintiff Coverall North America, Inc. hereby demands a jury for all issues so triable.

Attorney for Plaintiff

EXHIBIT A

CONFIDENTIALITY AGREEMENT


This Confidentiality Agreement ("Agreement") is entered into this 30 day of September, 19 91, by and between Coverall North America, Inc., a Delaware corporation ("Coverall"), and ___Joseph Farley___ ("Employee"),


WITNESSETH:


WHEREAS, Coverall is engaged in the business of directly and indirectly selling and servicing commercial janitorial franchises which are operated pursuant to a system utilizing a set of trademarks, operating procedures, marketing procedures, policies and materials, training procedures, pricing and billing services and procedures, assistance with employee and customer relationships, including soliciting and contracting with customers for the benefit of and generating revenue for both Coverall and its franchisees, and other materials, information and assistance, which system was developed by Coverall (the "Coverall System") from various locations throughout the United States; and

WHEREAS, Employee is knowledgeable of and experienced with the sale and operation of Coverall commercial janitorial franchises and with the operation of the Coverall System; and

WHEREAS, Coverall and Employee have entered into a certain oral employment agreement which may be terminated at will by either Coverall or Employee upon giving notice of such termination to the non-terminating party; and

WHEREAS, Coverall and Employee desire to include this Agreement as part of their existing employment agreement in order to more fully state their mutual promises, covenants and agreements;

NOW, THEREFORE, for and in consideration of Employee's employment with Coverall, the parties hereby agree as follows:

1. <u>Recitals.</u>  The recitals set forth above are fully incorporated into the terms of this Agreement as if set forth herein.

1



EXHIBIT A

   2.   <u>Confidentiality of Information.</u>   During the course of
Employee's employment with Coverall, Employee will receive, have
access to and create documents, records and information of a
confidential nature and proprietary to Coverall, its franchisees
and its customers, including, but not limited to, the names and
addresses of Coverall franchisees and customers, the names and
duties of key personnel of Coverall's customers, franchisees and
suppliers, approved supplier lists, criteria for approval of
supplies and equipment, pricing and credit information, and
information regarding the operation of the Coverall System, all of
which would not be available to Employee except for Employee's
employment relationship with Coverall.  Employee acknowledges that
such information and similar data is not generally known to the
trade, is of a confidential nature, is an asset of Coverall, and
to preserve Coverall's good will must be kept strictly confidential
and used only in the conduct of Coverall's business.   Employee
agrees that Employee will not use, disclose, copy, or permit the
use or disclosure of any such information in any manner whatsoever
except in the course of and during his employment with Coverall,
and thereafter only with the written consent of Coverall.   Upon
termination of Employee's employment with Coverall, for any reason,
Employee shall return to Coverall any and all of the written or
recorded confidential information, and all copies and reproductions
thereof, described in this paragraph 2 in his possession or under
his control.

   3.   <u>Restrictive Covenant.</u>  Employee expressly agrees that as
a result of the confidential documents, records and information he
will receive, come in contact with, create or have access to during
the course of his employment with Coverall, as more fully described
in paragraph 2 of this Agreement, and which documents, records and
information are furnished or created as a necessary and integral
part of the services to be performed by Employee, that he will not,
directly or indirectly, during his employment with Coverall and for
a period of two (2) years following termination of his employment
with Coverall, for whatever reason, in the geographic area set
forth in Exhibit A, attached hereto and made a part hereof by this
reference, as an individual, or as a partner, consultant, employee,
joint venturer, or franchisee, or as an officer, shareholder or '
director of any corporation, or an owner of a firm, sole
proprietorship, partnership, joint venture or other entity, enter
into or engage in the business of selling and/or servicing
commercial janitorial franchises.

   4.   <u>Non-Solicitation of Franchisees and Customers.</u>  Employee
expressly agrees that as a result of the confidential information,
documents and records he shall come in contact with, receive,
create or have access to during the course of his employment with
Coverall, as more fully described in paragraph 2 of this Agreement,
and which documents, records and information are furnished or
created as a necessary and integral part of the services to be

performed by Employee, that he will not, directly or indirectly, during Employee's employment with Coverall and for a period of two (2) years following the termination of his employment with Coverall, for any reason, as an individual, or as an employee, consultant, joint venturer, partner, or franchisee, or as an officer, director or shareholder of any corporation, or as an owner of a firm, sole proprietorship, joint venture or other entity, solicit, divert, take away, or interfere with any franchisees or customers of Coverall existing as of the date of termination of Employee's employment, to provide the same, or substantially the same, services or products as Coverall provides for said customers or franchisees.

5.    <u>Non-Solicitation   of   Employees   and   Independent Contractors.</u>  Employee expressly agrees that as a result of the confidential information, documents and records he shall come in contact with, receive, create or have access to during the course of his employment with Coverall, as more fully described in paragraph 2 of this Agreement, and which documents, records and information are furnished or created as a necessary and integral part of the services to be performed by Employee, that during Employee's employment with Coverall and for two (2) years following termination of Employee's employment with Coverall, for any reason, he will not, directly or indirectly, as an individual or as an employee, consultant, joint venturer, partner or franchisee, or as an officer, director or shareholder or any corporation, or as an owner of a firm, sole proprietorship, joint venture, partnership or other entity, entice, induce or in any manner influence any person, firm, or other entity who is or shall be in the service of Coverall whether as an employee or independent contractor, to leave such service for the purpose of performing the same, or substantially the same, duties that such employee or independent contractor performed for Coverall, for any other person, firm or entity.

6.    <u>Remedy.</u>  Employee acknowledges that the services rendered by Employee to Coverall are of a special and unique character, and that the restrictions of his activities as contained in this Agreement are reasonable and are required for Coverall's protection.    Employee hereby agrees that in the event of the violation by Employee of any of the provisions contained in this Agreement, Coverall will be entitled, if it so elects, to institute and prosecute proceedings at law or in equity to obtain damages with respect to such violation or the specific performance of this agreement by the Employee and/or, without limiting its rights, to enjoin the Employee from engaging in any activity in violation of any provisions of this Agreement. Employee and Coverall agree that in the event any court shall finally hold that the time or territory of any provision contained in this Agreement constitutes an unreasonable restriction against the Employee, such provisions as to time or territory shall not be rendered void but shall apply

3

as to time and territory or to such other extent as such court may judicially determine or indicate constitutes a reasonable restriction under the circumstances involved. The terms and conditions of this Agreement shall survive the termination, for any reason, of Employee's employment with Coverall.

7.   Divisibility.   The provisions of this Agreement are severable. If any provision of this Agreement shall be held to be invalid or unenforceable in any respect, such provision shall be carried out and enforced only to the extent to which it shall be valid and enforceable, and any such invalidity or unenforceability shall not affect any other provisions of this Agreement, all of which shall be fully carried out and enforced as if such invalid or unenforceable provision had not been set forth herein.

8.   Headings.   The paragraph headings contained herein are included solely for the convenience of the parties, and shall not be used in construction or interpretation of this Agreement.

9.   Choice of Law.   This Agreement shall be construed and enforced pursuant to the laws of the state of __Illinois____, as such laws apply to contracts executed and to be fully performed therein.

10.   Entire Agreement.   This Agreement constitutes the entire understanding and agreement of the parties with regard to the subject matter hereof, and supersedes all oral agreements, understandings or representations of the parties. This Agreement shall not be modified or amended unless such amendment is in writing signed by all of the parties hereto.

11.   No Waiver.   Coverall's failure or delay in exercising any right or remedy hereunder shall not constitute a waiver of such right or remedy and shall not excuse or release Employee from full performance of its obligations hereunder. No waiver by Coverall of any right or remedy hereunder, or of Employee's full performance of the terms and conditions contained herein, shall be effective unless in writing and signed by an authorized representative of Coverall.

12.   Acknowledgement of Agreement.   Employee acknowledges reading this Agreement and to fully understanding its terms and conditions.

4

IN WITNESS WHEREOF, the parties hereto have entered into this
Agreement as of the date first above written.

Employee:                              Coverall North America, Inc.
                                       a Delaware corporation

_Joe Fairley_                          _X_____

_____                _____
                                       17W220 22nd Street

_____                _____
                                       Suite 200

_Lisle Il 60532_                       _Oakbrook Terrace, IL  60181_
      (Address)                              (Address)

5

## EXHIBIT A

COOK COUNTY

DUPAGE COUNTY

KANE COUNTY

LAKE COUNTY

WILL COUNTY

**EXHIBIT B**

'06/23/99  14:45 FAX 619 584  .94          COVERALL NORTH AMERICA                    ☑003

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement") is entered into this _11_ th day of _OCTOBER_ _____, 199_5_ by and between Coverall North America, Inc., a Delaware corporation ("Coverall"), and _LEO DEAN HATCH_ ("Employee"),

## WITNESSETH:

WHEREAS, Coverall is engaged in the business of directly and indirectly selling and servicing commercial janitorial franchises which are operated pursuant to a system utilizing a set of trademarks, operating procedures, marketing procedures, policies and procedures, assistance with employee and customer relationships, including soliciting and contracting with customers for the benefit of and generating revenue for both Coverall and its franchisees, and other materials, information and assistance, which system was developed by Coverall (the "Coverall System") from various locations throughout the United States; and

WHEREAS, Employee is knowledgeable of and experienced with the sale and operation of Coverall commercial janitorial franchises and with the operation of the Coverall System; and

WHEREAS, Coverall and Employee have entered into a certain oral employment agreement which may be terminated at will by either Coverall or Employee upon giving notice of such termination to the non-terminating party; and

WHEREAS, Coverall and Employee desire to include this Agreement as part of their existing employment agreement in order to more fully state their mutual promises, covenants and agreements;

NOW, THEREFORE, for and in consideration of Employee's employment with Coverall, the parties hereby agree as follows:

1.    Recitals.    The recitals set forth above are fully incorporated into the terms of this agreement as if set forth herein.

2.    Confidentiality of Information.    During the course of Employee's employment with Coverall, Employee will receive, have access to and create documents, records and information of a confidential nature and proprietary to Coverall, its franchisees and its customers, including, but not limited to, the names and addresses of Coverall

REGIONAL

© 1994 Coverall North America, Inc.



EXHIBIT B

franchisees and customers, the names and duties of key personnel of Coverall's customers, franchisees and suppliers, approved supplier lists, criteria for approval of supplies and equipment, pricing and credit information, and information regarding the operation of the Coverall System, all of which would not be available to Employee except for Employee's employment relationship with Coverall. Employee acknowledges that such information and similar data is not generally known to the trade, is of a confidential nature, is an asset of Coverall, and to preserve Coverall's good will must be kept strictly confidential and used only in the conduct of Coverall's business. Employee agrees that employee will not use, disclose, copy or permit the use or disclosure of any such information in any manner whatsoever except in the course of and during his employment with Coverall, and thereafter only with the written consent of Coverall. Upon termination of Employee's employment with Coverall, for any reason, Employee shall return to Coverall any and all of the written or recorded confidential information, and all copies and reproductions thereof, described in this paragraph 2 in his possession or under his control.

3.    <u>Restrictive Covenant.</u>    Employee expressly agrees that as a result of the confidential documents, records and information he will receive, come in contact with, create or have access to during the course of his employment with Coverall, as more fully described in paragraph 2 of this Agreement, and which documents, records and information are furnished or created as a necessary and integral part of the services to be performed by Employee, that he will not, directly or indirectly, during his employment with Coverall and for a period of two (2) years following termination of his employment with Coverall, for whatever reason, in the geographic area set forth in Exhibit A, attached hereto and made a part hereof by this reference, as an individual, or as a partner, consultant, employee, joint venturer, or franchisee, or as an officer, shareholder or director of any corporation, or an owner of a firm, sole proprietorship, partnership, joint venture or other entity, enter into or engage in the business of selling and/or servicing commercial janitorial franchises.

4.    <u>Non-Solicitation of Franchisees and Customers.</u>  Employee expressly agrees that as a result of the confidential information, documents and records he shall come into contact with, receive, create or have access to during the course of his employment with Coverall, as more fully described in paragraph 2 of this Agreement, and which documents, records and information are furnished or created as a necessary and integral part of the services to be performed by Employee, that he will not, directly or indirectly, during Employee's employment with Coverall and for a period of (2) years following the termination of his employment with Coverall, for any reason, as an individual, or as an employee, consultant, joint venturer, partner, or franchisee, or as an officer, director or shareholder of any corporation, or as an owner of a firm, sole proprietorship, joint venture or other entity, solicit, divert, take away, or interfere with any franchisees or customers of Coverall existing as of the date of termination of Employee's employment, to provide the same, or substantially the same, services or products as Coverall provides for said customers or franchisees.

5.    <u>Non-Solicitation of Employees and Independent Contractors.</u>  Employee expressly agrees that as a result of the confidential information, documents and records he shall come into contact with, receive, create or have access to during the course of his employment with Coverall, as more fully described in paragraph 2 of this Agreement, and which documents, records and information are furnished or created as a necessary and

REGIONAL

© 1994 Coverall North America, Inc.

integral part of the services to be performed by Employee, that during Employee's employment with Coverall and for two (2) years following termination of Employee's employment with Coverall, for any reason, he will not, directly or indirectly, as an individual or as an employee, consultant, joint venturer, partner or franchisee, or as an owner of a firm, sole proprietorship, joint venture, partnership or other entity, entice, induce or in any manner influence any person, firm, or other entity who is or shall be in the service of Coverall whether as an employee or independent contractor, to leave such service for the purpose of performing the same, or substantially the same, duties that such employee or independent contractor performed for Coverall, for any other person, firm or entity.

6.    Remedy.    Employee acknowledges that the services rendered by Employee to Coverall are of a special and unique character, and that the restrictions of his activities as contained in this Agreement are reasonable and are required for Coverall's protection. Employee hereby agrees that in the event of the violation by Employee of any of the provisions contained in this Agreement, Coverall will be entitled, if it so elects, to institute and prosecute proceedings at law or in equity to obtain damages with respect to such violation or the specific performance of this agreement by the Employee and/or, without limiting its rights, to enjoin the Employee from engaging in any activity in violation of any provisions of this Agreement. Employee and Coverall agree that in the event any court shall finally hold that the time or territory of any provision contained in this Agreement constitutes an unreasonable restriction against the Employee, such provision as to time or territory shall not be rendered void but shall apply as to time and territory or to such other extent as such court may judicially determine or indicate constitutes a reasonable restriction under the circumstances involved. The terms and conditions of this Agreement shall survive the termination, for any reason, of Employee's employment with Coverall.

7.    Divisibility.    The provisions of this Agreement are severable. If any provisions of this Agreement shall be held to be invalid or unenforceable in any respect, such provision shall be carried out and enforced only to the extent to which it shall be valid and enforceable, and any such invalidity or unenforceability shall not affect any other provision of this Agreement, all of which shall be fully carried out and enforced as if such invalid or unenforceable provision had not been set forth herein.

8.    Headings.    The paragraph headings contained herein are included solely for the convenience of the parties, and shall not be used in construction or interpretation of this Agreement.

9.    Choice of Law.    This Agreement shall be construed and enforced pursuant to the laws of the state of _CALIFORNIA_, as such laws apply to contracts executed and to be fully performed therein.

10.    Entire Agreement.    This Agreement constitutes the entire understanding and agreement of the parties with regard to the subject matter hereof, and supersedes all oral agreements, understandings or representations of the parties. Notwithstanding the above, this Agreement shall not alter or amend the current employment relationship between the parties or change the employee from his status as an employee at will. This Agreement shall not be modified or amended unless such amendment is in writing signed by all of the parties hereto.

REGIONAL

© 1994 Coverall North America, Inc.

11.    <u>No Waiver.</u>    Coverall's failure or delay in exercising any right or remedy hereunder shall not constitute a waiver of such right or remedy and shall not excuse or release Employee from full performance of its obligations hereunder, or of Employee's full performance of the terms and condition contained herein, shall be effective unless in writing and signed by an authorized representative of Coverall.

12.    <u>Acknowledgment of Agreement.</u>    Employee acknowledges reading this Agreement and to fully understanding its terms and conditions.

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date first above written.

Employee:                                          Coverall North America, Inc.
                                                   a Delaware corporation

*Leo Zweihistler*                                  _____

8194 NIESSEN WAY                                   2174 N. Gladstone Court, #C

FAIR OAKS, CA 95628                                Glendale Heights, IL 60139

© 1994 Coverall North America, Inc.

Exhibit A

The geographic location area to which the restrictive covenant of the attached Confidentiality Agreement shall apply as follows:

> Any geographic area which, at the time of the termination of the employer/employee relationship between Coverall and employee, is serviced by a Coverall regional office whether corporately owned or Service Franchised owned.

Each Coverall regional office services the entirety of the Metropolitan Statistical Area(s) in which it is operating.

Additionally, the territories for the Service Franchise regions are listed in the applicable Service Franchise Agreement.

_____          _____
Employee                                 Coverall North America, Inc.

REGIONAL

© 1994 Coverall North America, Inc.

**EXHIBIT C**

# AGREEMENT

This Agreement is entered into by and between Joseph K. Fairley ("Fairley") and Coverall North America, Inc., ("Coverall"), and is intended by the parties to clarify and settle, fully and finally, any differences between them, including, but not limited to, any differences arising out of Fairley's employment with Coverall and the termination of that employment.

1.  The final day of Fairley's employment with Coverall, as Vice President of Operations, will be effective January 15, 1999.

2.  Fairley represents to Coverall that he is signing this Agreement voluntarily, and with a full understanding of and in agreement with its terms, for the purposes of receiving consideration from Coverall beyond that provided by normal company policy.

3.  In reliance upon and in consideration of the above, and the representations and releases set forth herein, the parties acknowledge and agree as follows:

    a.  Fairley, as of January 15, 1999, be paid by Coverall any and all accrued salary and vacation pay to which he may be entitled as of this date, which will be the final date of his employment with Coverall.

    b.  Fairley will, on or before January 31, 1999, be paid any bonus, to which he may be entitled as of December 31, 1998, for equipment sales and/or national accounts net gain. This will be paid in accordance with the provisions of Paragraph 3d hereof. *Outstanding expense report will be paid within one week of receipt by Coverall.*

    c.  Fairley will, in accordance with the provisions of Paragraph 3d hereof, be paid the sum of Twenty Thousand Dollars ($20,000), which is equal to three (3) month's salary at his rate of pay as of the date of this Agreement. This amount shall be paid to Fairley on or before January 15, 1999.

    d.  Fairley acknowledges that as is required by law, payment of the above amounts shall be net of applicable income taxes, social security deductions and other necessary deductions. Fairley assumes full responsibility to all State and Federal taxing authorities for the tax consequences to him or Coverall, if any, including interest, sanctions or penalties, regarding income or other taxes, arising out of that amount. Accordingly, Fairley agrees fully indemnify and hold Coverall harmless for any such tax consequences to him or to Coverall.



EXHIBIT C

4.   Fairley does not waive any rights afforded him by the Consolidated Omnibus Budget Reconciliation Act (COBRA); specifically, Fairley may continue, <u>at his sole expense</u>, his medical insurance coverage.

5.   In consideration of the above, Fairley does hereby:

a.   Release and discharge forever, Coverall, and its agents, employees, officers, directors, shareholders, trustees, attorneys, assigns, independent contractors, successors, and affiliated corporations or organizations ("the Released Parties"), and each and all of them, from all liabilities, claims, causes of action, charges, complaints, obligations, costs, losses, damages, injuries, attorney's fees, and other legal responsibilities, of any form whatsoever, whether known or unknown, unforeseen, unanticipated, unsuspected or latent, which Fairley or his successors in interest now own or hold, or have at any time heretofore owed or held, or may at any time own or hold by reason of any matter or thing arising from any cause whatsoever prior to the date of execution of this Release, and without limiting the generality of the foregoing, from all claims related to his employment with Coverall.

b.   Agree and acknowledge that during the course of Fairley's employment with Coverall he has had access to and has obtained information of or pertaining to Coverall, various Coverall franchisees, and/or the Coverall system, which information is confidential and proprietary in nature. Such information derives independent economic value to its owners, as it is not generally known to the public or to other persons who can obtain economic value from its disclosure, and has been the subject of efforts that are reasonable under the circumstances to maintain confidentiality and/or secrecy. The information includes, but is not limited to, computer data, present and past compilations of financial and other statistical information, present and past financial statements and tax information, existing and proposed business plans, business and marketing strategies, marketing information and lists and information pertaining to pricing and to previous and current Coverall franchisees and customers. Accordingly, the described information constitutes trade secrets. Fairley acknowledges and agrees that this information and these trade secrets shall remain the property and information of Coverall; that he will keep such information confidential; and that he will not copy or use such information for his own benefit or reveal such trade secrets to any third party without the written consent of Coverall.

c.   Fairley reaffirms the terms and conditions of the September 30, 1991 Confidentiality Agreement between Fairley and Coverall. Specifically, Fairley acknowledges that he continues to be bound by Paragraph 2 thereof (Confidentiality of Information); Paragraph 4 thereof (Non-Solicitation of Franchisees and Customers); and Paragraph 5 thereof (Non-Solicitation of Franchisees and Independent Contractors). Fairley further agrees that he will not, subsequent to the execution of this Agreement, disparage Coverall, the Coverall System or any of Coverall's employees, officers or directors.

d.   During the course of his employment with Coverall, Fairley has received and was privy to numerous documents, records, and information which were a necessary and integral part of the services performed by him during that employment. The parties acknowledge that the use, by Fairley, of the information contained in those documents and records in a janitorial franchise business other than that of Coverall would be detrimental to Coverall and the operation of its business. Accordingly, Fairley agrees that in consideration of the

-2-

payment set forth in Paragraph 3c of this Agreement, he will not, prior to July 1, 1999, as an individual, or as a partner, consultant, employee, joint venturer, or franchisee, or as an officer, shareholder or director of any corporation, or as an owner of a firm, sole proprietorship, partnership, joint venture or other entity, enter into or engage in the business of selling and/or servicing commercial janitorial franchises or commercial janitorial service franchises in any geographic area which is currently serviced by a Coverall Regional Office, whether corporately owned or Service Franchisee owned.

e.   Specifically waive any right which he may have to re-employment by Coverall.

f.   Declare that he has made no assignment and will make no assignment of any claims which are being released and discharged by this Agreement.

g.   Specifically, Fairley agrees to release and discharge the Released Parties from any and all claims he may have up to the date of the execution of this Agreement under any applicable state, discrimination or civil rights laws, and any and all other common law or statutory claims which he may have up to the date of the execution of this Agreement including, but not limited to, any and all claims for breach of express or implied contract, defamation, interference with contractual relations, retaliation, public policy termination, discrimination of any kind, intentional infliction of emotional distress and any and all other claims of tortious conduct, statutory violations, breach of contract, or wage, hour or overtime claims.

h.   Agree to indemnify and hold harmless the Released Parties, and each of them, against any loss or liability whatsoever, including reasonable attorney's fees, caused by any action or proceeding, in any state or federal courts or administrative processes, which is brought by him or his successors in interest if such action arises out of, is based upon, or is related to any claim, demand or cause of action released herein.

i.   Expressly waive all Fairley's rights to claims including those which he may not know or suspect exist in his favor at the time of executing this Agreement, which if known to Fairley would have materially affected his settlement with the Released Parties.

j.   Acknowledge that Fairley has read this Agreement and that he is relying solely upon the contents of this Agreement and is not relying on any other representations whatsoever of the Released Parties as an inducement to enter into this Agreement.

k.   Acknowledge that Fairley was advised that he has the right to and should consult with an attorney of his choice prior to executing this Agreement.

l.   As a material inducement to the entering into of this Agreement, Fairley agrees that this Agreement and all provisions hereof, including the amount of consideration referred to in said Paragraph, shall be and shall remain CONFIDENTIAL. Fairley further promises and covenants not to disclose, publicize, or cause to be publicized any of said terms and conditions, except to his spouse, his attorneys and his accountants.

m.   Fairley further agrees that he will not take time after the execution of this Agreement in any manner, making any despairing remarks about Coverall, its business, and/or its officers, directors, and/or employees.

6.   In reliance on and in consideration of the above, Coverall does hereby:

a.   Release and discharge forever Fairley and his agents, assigns and successors ('the Released Parties") and each of them, from all liabilities, claims, causes of action, charges, complaints, obligations, costs, losses, damages, injuries, attorney's fees, and other legal responsibilities, of any form whatsoever, whether known or unknown, unforeseen, unanticipated, unsuspected or latent, which Coverall or its successors in interest now own or hold, or have at any time heretofore, owned or held, or may at any time own or hold by reason of any matter or thing arising from any cause whatsoever prior to the date of execution of this Agreement, and without limiting the generality of the foregoing, from all claims related to Fairley's employment with Coverall.

b.   Declare that it has made no assignment and will make no assignment of any claims which are being released and discharged by this Agreement.

c.   Agree to indemnify and hold harmless the Released Parties, and each of them, against any loss or liability whatsoever, including reasonable attorney's fees, caused by any action or proceeding, in any state or federal courts or administrative processes, which is brought by it or its successors in interest if such action arisen out of, is based upon, or is related to any claim, demand or cause of action released herein.

d.   Expressly waive all its rights to claims including those which it may not know or suspect exist in its factor at the time of executing this Agreement, which if known to it would have materially affected this settlement with the Released Parties.

e.   Acknowledge that it has read this Agreement and that it is relying solely upon the contents of this Agreement and is not relying on any other representations whatsoever of the Released Parties as an inducement to enter into this Agreement.

f.   As a material inducement to the entering into of this Agreement, Coverall agrees that the provisions of Paragraph 3 hereof, including the amount of consideration referred to in said Paragraph, shall be and remain CONFIDENTIAL. It further promises and covenants not to disclose, publicize or case to be publicized any of said terms and conditions, except to its shareholders, officers, directors, attorneys and accountants.

g.   That it will provide Fairley with a letter of recommendation in the form set forth in Exhibit A, hereof.

h.   Coverall further agrees that it will not, at any time after the execution of this Agreement, make any despairing remarks about Fairley.

7.    This Agreement shall be construed and enforced pursuant to the laws of the State of Florida.

8.    If a dispute arises out of or relates to this Agreement or the breach thereof, and said dispute cannot be resolved or settled through negotiation, the parties agree that prior to the filing of any litigation, they will first attempt, in good faith, to settle the dispute through non-binding mediation administered pursuant to the Commercial Mediation Rules of the American Arbitration Association, or as otherwise agreed upon by the parties. This mediation shall be administered by a neutral mediator agreed upon by the parties. In the event the parties are unable to so agree upon a mediator within 15 days of the date on which either party requests mediation of a matter, the mediator shall be provided by the American Arbitration Association. The costs of such mediation shall be shared equally by the parties. If subsequent litigation is necessary, the non-prevailing party shall reimburse the prevailing party its reasonable costs and expenses incurred in said litigation, including reasonable attorney's fees.

9.    As further consideration for the representations and releases set forth herein, Fairley agrees to execute such additional documents as may be necessary to carry out the intent of this Agreement.

Agreed to and Accepted:

By:  Joseph K. Fairley

Dated: _____ 1/15/99

Coverall North America, Inc. ("Coverall")

By: _____

Dated: _____ 1/15/99

**EXHIBIT A**

January ___, 1999

To Whom It May Concern:

This will advise that Joseph Fairley was employed by Coverall North America, Inc. from September 9, 1991 until January 15, 1999, as Vice President of Operations.

During the period of his employment with Coverall North America, Inc., Mr. Fairley performed his job duties in a most competent and professional manner.

Sincerely,

Ted Elliott
Chief Executive Officer
Coverall North America, Inc.

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Courts for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS 99 JUL 14 PM 4: 14 |
|---|---|
| Coverall North America, Inc. | Gerry Barlow, Joseph Fairly, Leo Dean Hatch, and Sunset Building Services, Inc. |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Broward
(EXCEPT IN U.S. PLAINTIFF CASES)  (FLA)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT San Diego
(IN U.S. PLAINTIFF CASES ONLY)  (CA)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John B. Little
CALLAHAN, LITTLE & SULLIVAN
12707 High Bluff Drive, Suite 100
San Diego, CA 92130 (858)481-6111

ATTORNEYS (IF KNOWN)

'99cv 1432 J

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☒1 | Incorporated or Principal Place of Business in This State | ☒4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Action for breach of contract, and mis-
appropriation of trade secrets. Diversity per 28 USC 1391(a)

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury—Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 07/08/99

SIGNATURE OF ATTORNEY OF RECORD

#50969    $150